BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: AT&T Inc. Cellular Customer Data Security Breach Litigation | MDL Docket No. 3124 |

**INTERESTED PARTY PLAINTIFF TINA POWELL'S RESPONSE IN SUPPORT OF MOTION FOR TRANSFER PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

I.  **Introduction**

Plaintiff Tina Powell in *Powell v. AT&T, Inc.*, No. 3:24-cv-01948 (N.D. Tex.), respectfully submits this response to the pending initial Motion for Transfer filed pursuant to 28 U.S.C. § 1407 (MDL No. 3124, Dkt. Nos. 1 and 2), requesting transfer and centralization, in the Northern District of Georgia before to the Honorable Victoria M. Calvert, of all actions[1] that involve allegations concerning AT&T Inc. ("AT&T") and its related entities associated with the data breach disclosed by AT&T on July 12, 2024.

As a threshold issue, Plaintiff Powell opposes blanket centralization and transfer of all cases in both MDL No. 3124 (this "AT&T MDL") and MDL No. 3126 (*IN RE: Snowflake, Inc., Data Security Breach Litigation* ("Snowflake MDL")) and instead supports centralization and transfer to the Northern District of Georgia, all cases (including those in both MDLs) that specifically allege AT&T and its related entities failed to properly secure and safeguard the personally identifiable information ("PII") and/or customer proprietary network information

---

[1] This submission addresses all actions in MDL No. 3124 and those in MDL No. 3126 involving AT&T, Inc. and AT&T Mobility, LLC. Plaintiff Powell requests that the JPML consider centralizing and transfer all such cases to a single District Court for coordinated pretrial proceedings. This includes cases solely alleging claims against AT&T (or related entities) as well as those with multiple defendants where AT&T is involved. Plaintiff Powell proposes that the JPML evaluate the feasibility of consolidating actions involving AT&T while potentially severing or otherwise addressing cases with multiple defendants to streamline the litigation process effectively.

1

("CPNI") ultimately accessed and exfiltrated as disclosed by AT&T on July 12, 2024. Simply put, the AT&T breach is highly unique, unprecedented, and improper to be subsumed within the Snowflake MDL.

Centralization of both the Snowflake and AT&T MDL set of actions is inconsistent with the policy and practice of MDLs, as explained below, because there are substantial differences in liability theories and damages categories between the two groups of cases, as well as potential conflicts among the Snowflake MDL and AT&T MDL actions herein. While both Snowflake and AT&T cases involve unauthorized access to sensitive data and raise some similar issues related to data protection, beyond that, the two MDL actions differ significantly, especially with the scope of the compromised data and the specific legal claims at issue. Consequently, the two actions have little in common beyond the initial overlap and do not warrant centralization and transfer to a single District Court.

II. **Argument**

   A. **The objectives of 28 U.S.C. § 1407 do not support the centralization of all actions in MDL No. 3124 and in MDL No. 3126 pending before this Panel.**

Under 28 U.S.C. § 1407(a), the JPML is authorized to consolidate and coordinate pre-trial proceedings "for the convenience of parties and witnesses" and to "promote the just and efficient conduct of such actions." The cases against AT&T bear a unique factual core.[2] Even if

---

[2] To the extent the Honorable Panel is considering AT&T's position that transfer and consolidation may be more appropriate in MDL No. 3126, *IN RE: Snowflake, Inc., Data Security Breach Litigation*, it is important to highlight the distinct facts surrounding AT&T and the nature of the data impacted. These cases involve a data breach of an unprecedented and unique scope: highly personal "records of calls and texts of **nearly all of AT&T's cellular customers**, customers of mobile virtual network operators (MVNOs) using AT&T's wireless network, as well as AT&T's landline customers who interacted with those cellular numbers" for the relevant time period. (*AT&T Addresses Illegal Download of Customer Data*, AT&T (July 12, 2024), https://about.att.com/story/2024/addressing-illegal-download.html) (emphasis added). Nearly a

2

pending actions in MDL 3124 did share some facts related to Snowflake and MDL 3126, given the unique and highly peculiar breach impacting AT&T alone and ("nearly all of") its customers, which necessitated the involvement of numerous federal agencies like the FBI and DOJ due to the risks to "**national security**"[3]—these cases (in both MDL 3124 and 3126) should not be blanketly combined and centralized absent a persuasive showing that judicial efficiency would be significantly served. *In re Adderall XR (Amphetamine/Dextroamphetamine) Mktg., Sales Practices & Antitrust*, 968 F. Supp. 2d 1343 (J.P.M.L. 2013) ("We acknowledge that these actions share a common factual core… However, we are not persuaded, on the record before us, that centralization is necessary either to assure the convenience of the parties and witnesses or for the just and efficient conduct of this litigation.")

The distinct legal and factual issues in the AT&T and Snowflake actions warrants keeping them separate. The AT&T actions will focus on the company's direct responsibilities and impact on customers—why such highly personal information was stored in such a vulnerable manner—while the Snowflake actions address third-party liability, contractual obligations, and data management practices. The differences in legal defenses, potential damages, and regulatory scrutiny make consolidation further inappropriate.

---

third of American mobile customers (AT&T's market share) has been directly impacted, and when the indirect impact is further calculated and added (naturally, AT&T customers will call or text with non-AT&T mobile customers), it is not a stretch to assert the impact of this breach of highly personal data reaches the majority of Americans. To say nothing of the unique legal and factual issues raised by the impact upon mobile customers, the unfathomable scope of this data breach renders it more appropriate for separate coordinated and consolidated pretrial proceedings as explained below. Plaintiff Powell respectfully submits that MDL No. 3124 should be consolidated and transferred to the Northern District of Georgia.

[3] *AT&T, FBI release statements after 'nearly all' AT&T customers' cell, text records stolen by hackers*, NBC, (July 12, 2024), https://www.nbcchicago.com/news/att-fbi-release-statements-after-nearly-all-att-customers-cell-text-records-stolen-by-hackers/3487773/

AT&T actions will also contend with distinct factual issues such as: AT&T's relationship with its former/current customers, representations or responsibilities AT&T and its entities owed to the affected victims of the data breach, AT&T's prior data breach and failures to secure consumer data—including one as recently as April 2024, AT&T's data specific practices, duties and liability, AT&T's notice to the victims and the public regarding the data breach—and the unique implications of a data breach that threatens national security, and did AT&T and its entities comply with relevant data protections laws and industry standards. These are just some of the factual issues that will be of critical importance and permeate the AT&T actions but will have little to no significance to the Snowflake actions. In contrast, cases brought against Snowflake seek distinct and unique claims, issues of liability, and evidence that do not directly relate to a putative class of individual consumers; Snowflake's customers are corporate in nature. (*In re Pharmacy Ben. Plan Administrators Pricing Litig.*, 206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002) (the Panel has ruled against centralization where such unique questions predominate over any common questions).

Centralizing Snowflake and AT&T actions under § 1407 would burden the docket with myriad issues not germane to each other while providing no relief from the duplicative discovery that could not otherwise be accomplished through the coordination of the two MDLs. *Id.* (denying centralization and noting that even if the actions "share common legal questions and, perhaps, a few factual questions, unique questions of fact predominate over any common questions of fact."). Differences in the question of law also contribute to a finding that centralization and consolidation are improper. *In re Athena Universal Life II Cost of Ins. Increase Litig.*, 268 F. Supp. 3d 1354, 1355 (J.P.M.L. 2017) (finding that "overlap in factual and legal issues" alone is insufficient for centralization).

AT&T actions primarily seek compensation for breach of individual consumer privacy rights, including the failure to protect PII, raising distinct liability theories and damages issues compared to the Snowflake actions. The questions of law in the AT&T MDL and the Snowflake MDL differ significantly due to each company's role in a data breach and their respective responsibilities. For example, AT&T will contend with a paramount question unique to their situation: why was such sensitive and personal data for millions of American mobile customers stored in such a vulnerable manner on a cloud platform. Moreover, the damage models will vastly differ between a putative class of AT&T consumers versus putative class of consumers for Ticketmaster, Advance Auto Parts, or Neiman Marcus (additional defendants and cases subsumed into MDL No. 3126), because the personal data impacted in AT&T, as referenced above, is so unique and highly dangerous that it warranted delayed disclosure and outright admission by the FBI that it raises national security concerns. *See* fn. 3, *supra*. Stolen phone logs and text message data have frightening real world implications,[4] issues that are, again, unique to AT&T and absent from the other cases in MDL 3126.

The AT&T MDL actions should not be consolidated with the Snowflake MDL actions in a single MDL track, as different legal theories (and resulting different damage models that must now match the legal theory post-*Comcast*) burden plaintiffs in both MDL tracks with issues that are not germane to them and would be appropriately handled by two separate MDLs.

---

[4] "In the wrong hands, the stolen location data from phone records could also be used to blackmail people having affairs, for criminals to find the homes of police officers and prosecutors or for abusers to track down their former romantic partners." *Hackers stole almost everyone's AT&T phone records. What should you do?*, Washington Post (July 12, 2024), https://www.washingtonpost.com/technology/2024/07/12/att-data-breach-hack-calls-texts-what-do/

### B. Consolidating and centralizing AT&T MDL and Snowflake MDL actions will not promote efficiency or serve the convenience of parties and witnesses.

The paramount consideration for centralization is whether doing so will promote efficiency and convenience. *In re Truck Accident Near Alamagordo, New Mexico, on June 18, 1969*, 387 F. Supp. 732, 733 (J.P.M.L. 1975). Elimination of inconsistent pretrial rulings, streamlined discovery, and reduction of the overall burdens of the litigation upon the courts and the parties are typical considerations the JPML will weigh, however, as demonstrated above, vastly divergent factual and legal issues exist between the AT&T MDL actions and the Snowflake MDL actions and any 'gains' from their centralization will clearly be outweighed by burdening one distinct group of plaintiffs with the pretrial rulings, discovery, and burdens from the other group.[5] Indeed, seeking efficiencies through "centralized treatment of disputed legal questions, merely to avoid different federal courts having to decide the same issue is, by itself, usually not sufficient to justify Section 1407 centralization." *In re ABA Law School Accreditation Litig.*, 325 F.Supp. 3d 1377, 1378 (J.P.M.L. 2018).

Blanket centralization will likely delay resolution and make these cases more cumbersome. There is no need to involve AT&T MDL actions and their counsel and resources in issues only affecting the Snowflake MDL actions and vice versa, to say nothing about the clear conflicts that may arise.[6] Finally, to the extent any discovery may overlap, given the data breach

---

[5] Given the differences between the two groups, the convenience of witnesses or efficient discovery in these cases would not be served by centralization and transfer. Voluntary coordination of discovery in the two sets of cases, including cross-noticing depositions and using a joint repository of document productions and written discovery, would be the most efficient method to address any overlap in relevant discovery. *See* Manual for Complex Litigation, §20.14 (2004). Judicial efficiency would be best served by leaving the AT&T MDL actions and the Snowflake MDL actions on separate MDL tracks.

[6] AT&T consumers' interests and related harm will markedly differ than those who had PII/personal data compromised at Ticketmaster, Advance Auto Parts, and the other companies

affecting both sets of actions may have some overlap, the parties can easily resolve any duplicative discovery issues through informal coordination. *See In re: Best Buy Co., Inc., California Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1379 (J.P.M.L. 2011).

### C. Centralization of AT&T MDL actions and Snowflake MDL actions in separate federal district courts, under § 1407, is appropriate here.

Plaintiff Powell strongly urges the JPML to consider, at minimum, separating the AT&T MDL actions from the Snowflake MDL actions. Blanket centralization is improper here. Plaintiff Powell further argues that the centralization of AT&T MDL actions in the Northern District of Georgia for the reasons articulated below is the appropriate course of action. When deciding on an appropriate transferee district, the Panel considers the district's central location for the parties, witnesses, documents, and counsel, as well as ease of accessibility. *In re Vehicle Carrier Servs. Antitrust Litig.*, 978 F. Supp. 2d 1382, 1383 (J.P.M.L. 2013).

#### i. The Northern District of Georgia is the most appropriate transferee forum for the AT&T MDL actions.

The AT&T MDL actions should be centralized and transferred to the Northern District of Georgia. The Northern District of Georgia is the most appropriate venue for the AT&T MDL actions because AT&T Mobility, LLC has its principal place of business in Georgia, whose documents and witnesses will be critical to this particular litigation, it is a convenient forum located centrally between all AT&T MDL actions filed to date, and because of the ease of direct travel for parties' counsel, and it has the resources and the subject matter experience that this litigation will require.

---

experiencing a data breach in MDL No. 3126. There is a need for different structures and administration of pretrial proceedings for each group. *In re Oil Spill by the Oil Rig "Deepwater Horizon" In the Gulf of Mexico, On April 20, 2010*, MDL No. 2179, Doc. 1561 at 2 (the plaintiff argued that "the MDL Plaintiffs' Steering Committee cannot adequately or ethically represent" both the plaintiff and the other plaintiffs in that MDL).

### ii. *AT&T Mobility, LLC is Headquartered in Georgia.*

AT&T Mobility, LLC is an American telecommunications company headquartered in Georgia. It is a wholly owned subsidiary and the consumer telecommunications arm of AT&T Inc. and provides a full range of wireless voice, messaging, and data services to consumers in the United States. AT&T Mobility, LLC has been named as a defendant in the actions before this Panel. Centralizing the litigation in the Northern District of Georgia is particularly compelling given that AT&T Mobility LLC is located in that district and given AT&T Mobility LLC's relevance to the unique type of data stolen: phone logs and text message logs. This centralization would align with the convenience of having the cases adjudicated in a district closely linked to AT&T's primary business operations and records. This can facilitate easier access to relevant documents, witnesses and evidence. By consolidating the cases in this jurisdiction, the JPML can enhance efficiency and coordination, minimize travel burdens for parties, and ensure streamlined proceedings, thereby promoting judicial efficiency and effectiveness.

### iii. *The District of Georgia is centrally located.*

The AT&T MDL actions are pending in Texas, New Jersey, Montana, California, Washington, and Georgia. Georgia is centrally located between these locations, and Hartsfield-Jackson Atlanta International Airport is located near the Northern District of Georgia, Atlanta courthouse. These considerations provide easy and convenient access for out-of-town parties, witnesses and counsel.

### iv. *The District of Georgia has the resources and litigation experience to effectively handle this MDL.*

The Northern District of Georgia has ample judicial resources to effectively and efficiently handle this multidistrict litigation. AT&T is already subject to the claims raised in these civil actions, and the proposed transfer and consolidation before Judge Victoria M. Calvert

in the Northern District of Georgia will enhance the convenience for the parties and witnesses, promoting the just and efficient conduct of these actions. The Northern District of Georgia possesses the necessary resources, capacity, and experience needed to manage complex MDLs efficiently. *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 289 F.Supp. 3d 1322 (J.P.M.L. 2017). Judges within the Northern District of Georgia have efficiently handled numerous MDLs. If the court decides to centralize and transfer all cases to one district, Georgia is the appropriate venue. AT&T Mobility, LLC is headquartered in Georgia, where key decision makers and witnesses are located and where discovery is likely to occur.

### III. Conclusion

For the foregoing reasons, Plaintiff Powell supports centralization and transfer of all cases against AT&T to a single district for pretrial proceedings and that the Northern District of Georgia is the most appropriate transferee district. For all the reasons articulated above, Plaintiff respectfully requests that this Honorable Panel transfer the related actions, as well as all subsequently filed related actions, to Judge Victoria M. Calvert in the Northern District of Georgia for coordinated and consolidated pretrial proceedings.

Dated: August 21, 2024            Respectfully submitted,

/s/ *William Audet*
William M. Audet
Ling Y. Kuang
**AUDET & PARTNERS, LLP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Tel: (415) 568-2555
Fax: (415) 568-2556
waudet@audetlaw.com
lkuang@audetlaw.com
*Counsel for Plaintiff Tina Powell*